IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY RIGGINS | : | CIVIL ACTION No. 10-1557 |
| v. | : | CRIMINAL ACTION No. 06-700 |
| UNITED STATES OF AMERICA | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                December 13, 2011

Petitioner Jeffrey Riggins seeks relief from his conviction and sentence pursuant to 28 U.S.C. § 2255. Riggins argues the sentence imposed for his conviction of possession of cocaine base (crack) with intent to distribute violates the Eighth Amendment because of the unwarranted disparity in the penalties for crack and powder cocaine offenses. Riggins also seeks leave to amend his § 2255 motion to add an ineffective assistance of counsel claim and a claim that this Court's application of the career offender provision of the United States Sentencing Guidelines violated *United States v. Booker*, 543 U.S. 229 (2005). For the following reasons, Riggins's § 2255 motion and request for leave to amend will be denied.

**FACTS**

In December 2006, Riggins was indicted on one count of possession of five grams or more of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Seven months later, in July 2007, Riggins was indicted on an additional 24 counts of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

Before trial, Riggins filed a motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S.

154 (1978),[1] arguing the affidavit in support of the warrant for his arrest contained deliberately or recklessly false statements. Specifically, Riggins challenged statements by the affiant, Drug Enforcement Administration Task Force Officer Jeffrey Taylor, that (1) during an intercepted phone call on October 21, 2006, Riggins told the other party to the call he "had a very high yield of crack cocaine when he cooked the cocaine previously purchased from the other individual," and (2) Riggins had a series of phone conversations with the same individual on November 25, 2006, in which he "negotiated the purchase of 20 grams of cocaine from the other individual." Def.'s Mot. for a *Franks* Hr'g ¶¶ 3-4. Riggins argued Taylor's statement about the October 21 call was false because the transcript of the call did not support Taylor's characterization, and he challenged the statement about the November 25 call on the ground that there was no record of any intercepted call on that date.

In an August 27, 2007, Memorandum and Order, this Court denied Riggins's motion, finding Taylor's characterization of the October 21 call was a reasonable interpretation of the intercepted conversation,[2] and finding Riggins had failed to produce any evidence of malice or recklessness by

---

[1] Pursuant to *Franks*, a defendant is entitled to a hearing to challenge the validity of a warrant (and to seek suppression of any fruits thereof) if the defendant "makes a substantial preliminary showing" that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in the warrant affidavit, without which the affidavit is insufficient to establish probable cause. 438 U.S. at 155-56.

[2] The October 21 conversation at issue occurred within hours after Riggins purchased 28 grams of cocaine from his alleged supplier. In the transcript of the call, Riggins starts the conversation by telling the supplier "[b]ueno[,] [m]ucho [b]ueno" and then asks him, "[y]ou want to know how much I got out of that?" Def.'s Mot. for a *Franks* Hr'g Ex. B. When the supplier says "[y]eah," Riggins tells him, "[f]orty-four. Forty four grams. . . . Twenty-eight. Forty-four . . . ." *Id.* Riggins then asks the supplier to put aside "sixty" for him. *Id.* At the hearing on Riggins's motion, Officer Taylor admitted Riggins did not specifically refer to cooking cocaine into crack during the October 21 conversation, but explained that based on his experience, it was clear from the context of the conversation that Riggins was referring to having cooked the 28 grams of cocaine into 44 grams of crack. Hr'g Tr. 41-43, 55, Aug. 16, 2007.

Taylor, in light of the Government's evidence suggesting Taylor had simply misstated the date of the calls he identified as having occurred on November 25, 2006. This Court also found the allegedly false statements in the affidavit were not necessary to the determination of probable cause in any event.

Riggins proceeded to trial, and on November 5, 2007, a jury convicted him on all of the drug counts of the Superseding Indictment.[3] At the sentencing hearing on April 7, 2008, this Court adopted the Presentence Investigation Report (PSR) for Riggins, in which the probation officer concluded Riggins's criminal history qualified him as a career offender under U.S.S.G. § 4B1.1. PSR ¶ 30. As a result of his classification as a career offender, Riggins was assigned an offense level of 37 and a criminal history category of VI, yielding an advisory Guidelines range of 360 months to life. *Id.* ¶¶ 30, 67, 102. After considering the factors set forth in 18 U.S.C. § 3553(a), this Court sentenced Riggins to 432 months of imprisonment on the drug counts, 15 years on the firearm count (to run concurrently), eight years of supervised release, a fine of $3,000, and a special assessment of $2,600. Riggins appealed his conviction, challenging the denial of a *Franks* hearing, but the Third Circuit affirmed, finding that even if Riggins had been arrested illegally, such illegal arrest was not a basis to overturn his conviction. *United States v. Riggins*, 319 F. App'x 180 (3d Cir. 2009).

On April 8, 2010, Riggins filed a pro se § 2255 motion, seeking to vacate his sentence on the ground that the disparity in penalties for crack and powder cocaine offenses is unconstitutional. At this Court's direction, Riggins's re-filed his § 2255 motion on the Court's current standard form on June 21, 2010, and the Government responded to the motion on November 10, 2010. Riggins thereafter filed a reply brief in which he sought permission to amend his § 2255 motion to include

---

[3] Outside of the jury's presence, Riggins pled guilty to the firearm charge.

an ineffective assistance of counsel claim and an additional claim that his sentence was unconstitutional. At this Court's request, the Government filed a response to Riggins's reply. Riggins filed a further reply in May 2011.

**DISCUSSION**

Pursuant to § 2255, a prisoner in custody may move the court which imposed his sentence to vacate, set aside, or correct the sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

In his § 2255 motion, Riggins challenges the constitutionality of his sentence based on the disparity in penalties for crack and powder cocaine offenses in the federal system.[4] Riggins argues his sentence violates the Eighth Amendment because (1) the crack/powder cocaine disparity is unwarranted and produces sentences grossly disproportionate to the crime for crack offenses, and (2) the disparity is no longer acceptable in light of the changing views of the various components of the criminal justice system on the subject since the passage of the Anti-Drug Abuse Act of 1986, which created the disparity. In support of the latter argument, Riggins cites the Supreme Court's recent decisions in *Kimbrough v. United States*, 552 U.S. 85 (2007), and *Spears v. United States*, 555 U.S. 261 (2009), in which the Court recognized the district courts' authority, post-*Booker*, to "reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those

---

[4] In 2008, when Riggins was sentenced, "the Anti-Drug Abuse Act of 1986 . . . mandated penalties for powder cocaine and crack cocaine according to a 100:1 ratio," such that "a conviction involving five grams of crack cocaine resulted in the same five-year mandatory minimum term of imprisonment as a conviction involving 500 grams of powder cocaine." *United States v. Dixon*, 648 F.3d 195, 196-97 (3d Cir. 2011) (citing 21 U.S.C. § 841(b)(1)(B)(iii) (2006)).

4

Guidelines," and not simply based on the individualized circumstances of a particular case. *Id.* at 266. He also cites the Fair Sentencing Act of 2010 (FSA), which increased the quantities of crack necessary to trigger the five- and ten-year statutory mandatory minimum penalties under 21 U.S.C. § 841(b)(1), thereby reducing the crack-to-powder cocaine ratio to approximately 18:1. Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2(a), 124 Stat. 2372 (2010); *Dixon*, 648 F.3d at 197. Although acknowledging the FSA is not retroactive,[5] Riggins argues these developments reflect an emerging consensus that the crack/powder disparity creates sentences that are disproportionate and unwarranted.

The Government argues the enhanced penalties for crack offenses were not a factor in Riggins's sentence because his sentence was based on his status as a career offender, which resulted in a higher base offense level than if he had been sentenced based on the drug quantities attributable to him, and an advisory Guidelines range substantially higher than the ten-year mandatory minimum sentence applicable to the crack charge. While it is true Riggins's advisory Guidelines range was determined based on the career offender Guideline, rather than the Guideline for drug offenses, the crack charge appears to have affected the selection of the applicable offense level under that Guideline and thus the corresponding advisory Guidelines range.[6] Therefore, the Court will address

---

[5] The FSA does not apply retroactively to defendants sentenced before its August 3, 2010, enactment date. *Dixon*, 648 F.3d at 198-203 (holding the FSA applies to all defendants sentenced on or after its August 3, 2010, effective date, regardless of when the offense conduct occurred, but does not apply retroactively to defendants sentenced before the effective date). Riggins concedes as much, noting the bills ultimately enacted as the FSA "are <u>not retroactive</u>." Pet'r's Mem. in Support of § 2255 Mot. 14.

[6] Under the career offender Guideline, a defendant's offense level depends on the statutory maximum term of imprisonment for the offense of conviction. The PSR assigned Riggins an offense level of 37 based on the statutory maximum life sentence applicable to the crack charge, rather than the lower offense level (34) corresponding to the 30-year statutory maximum on the cocaine charges. *See* U.S.S.G. § 4B1.1(b) (Nov. 2007) (specifying an offense level of 37 where the offense statutory

5

Riggins's constitutional challenge.[7]

As the Government notes, the Third Circuit has upheld the constitutionality of the statutory mandatory minimum sentences for crack offenses and the 100:1 crack-to-powder cocaine ratio against Eighth Amendment, as well as equal protection, challenges.[8] In *United States v. Frazier*, 981

---

maximum is life and an offense level of 34 where the statutory maximum is 25 years or more). As a result, Riggins's advisory Guidelines range was 360 months to life, rather than 262-327 months. Although it is thus correct to view the crack charge as having affected Riggins's advisory Guidelines range, the effect is less pronounced than Riggins claims.

[7] Presumably in response to the Government's argument regarding the career offender Guideline, in his reply brief, Riggins seeks leave to amend his § 2255 motion to include a claim that this Court's application of that Guideline violated his Sixth Amendment rights under *United States v. Booker*, 543 U.S. 229 (2005). Riggins appears to argue the Court's use of the offense level mandated by U.S.S.G. § 4B1.1, without regard to the factors set forth in 18 U.S.C. § 3553(a), violates *Booker*'s holding that the Sentencing Guidelines are to be treated as advisory rather than mandatory. Pet'r's Reply 6, 13-14.

Although the Guidelines are no longer mandatory, in sentencing a defendant, a district court must still begin by calculating the applicable range under the Guidelines, including the career offender Guideline, if applicable. *United States v. Wright*, 642 F.3d 148, 152 (3d Cir. 2011); *Nabried v. United States*, 199 F. App'x 102, 104 (3d Cir. 2006). The court must next consider any motions for a departure from the applicable Guidelines range and, if granted, must state how the departure affects the Guidelines calculation. *Wright*, 642 F.3d at 152. Finally, the court must "consider[] the recommended Guidelines range together with the statutory factors listed in 18 U.S.C. § 3553(a) and determine[] the appropriate sentence, which may vary upward or downward from the range suggested by the Guidelines." *Id.* (citing *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009)).

Here, because Riggins qualified as a career offender under U.S.S.G. § 4B1.1, this Court applied the offense level and criminal history category dictated by the career offender provision in calculating Riggins's advisory Guidelines range. *Nabried*, 199 F. App'x at 104. After adopting the PSR, this Court expressly recognized that the Guidelines are no longer mandatory but advisory, and acknowledged its authority to impose a sentence outside of the Guidelines, if appropriate. The Court then proceeded to consider the § 3553(a) factors to fashion an appropriate sentence. Because the application of the career offender Guideline in this case did not run afoul of *Booker*, Riggins's request for leave to amend his § 2255 petition to include a Sixth Amendment claim regarding this issue is denied as futile.

[8] Although Riggins does not expressly raise an equal protection challenge to the crack/powder cocaine disparity, he notes the disproportionate effect it has had on minorities. Pet'r's Mem. in Support of § 2255 Mot. 6-7.

F.2d 92, 95-96 (3d Cir. 1992) (per curiam), the Third Circuit rejected the argument that the disparity in the penalties for crack and powder cocaine offenses was so disproportionate as to amount to cruel and unusual punishment. The court first observed there are "reasonable grounds" for imposing greater punishment for crack offenses than for powder cocaine offenses involving similar drug quantities, including "differences in the purity of the drugs, the dose size, the method of use, the effect on the user, and the collateral social effects of the traffic in the drug." *Id.* at 96. Noting the selection of the most appropriate ratio was a judgment for Congress and the Sentencing Commission, the court went on to hold the 100:1 ratio did not "step[] beyond the bounds of the Constitution." *Id.* The court in *Frazier* also rejected an equal protection challenge to the sentencing scheme's 100:1 ratio, finding no evidence the distinction between crack and powder cocaine "was motivated by any racial animus or discriminatory intent on the part of either Congress or the Sentencing Commission," and holding the distinction was "constitutional under rational basis equal protection review." *Id.* at 95. Since *Frazier* was decided, the Third Circuit has consistently adhered to these holdings. *See, e.g.*, *United States v. Marshall*, No. 07-4778, 2009 WL 179876, at *2 (3d Cir. Jan. 27, 2009) (rejecting as meritless a defendant's argument that the 10-year mandatory minimum for his crack offense violated the Eighth Amendment because it was disproportionate to his crime and disproportionate to the sentences of powder cocaine defendants); *United States v. Shields*, 281 F. App'x 100, 101 (3d Cir. 2008) (adhering to prior holdings that mandatory minimum sentences for crack offenses and 100:1 crack-to-powder ratio do not violate the Eighth Amendment or a defendant's right to due process); *United States v. Alton*, 60 F.3d 1065, 1069 n.7 (3d Cir. 1995) (noting *Frazier* decision is in accord with decisions of other federal appellate courts "uniformly uph[o]ld[ing] the statutory and guideline penalties for crack cocaine offenses against due process,

7

equal protection, and cruel and unusual punishment claims").

Although Riggins points to more recent developments in the law, including the Supreme Court's decisions in *Kimbrough* and *Spears* and the enactment of the FSA, two different panels of the Third Circuit have specifically declined to reconsider the constitutionality of the crack/powder cocaine disparity based on these developments. *See United States v. Moore*, 435 F. App'x 125, 128 (3d Cir. 2011) (rejecting entreaty to reconsider *Frazier* in light of the FSA and *Kimbrough* as "unavailing"); *United States v. Chandler*, 395 F. App'x 908, 911 (3d Cir. 2010) (declining to reconsider the constitutionality of crack/powder cocaine disparity based on *Kimbrough* and the FSA, and noting *Kimbrough* "does not support the notion that the . . . ratio and the mandatory minimum sentence are unconstitutional" and the FSA "is not determinative of the[ir] unconstitutionality"). Riggins's challenge to the constitutionality of his sentence will likewise be denied.

In his reply brief, Riggins seeks leave to amend his § 2255 motion to include a claim of ineffective assistance of counsel. Although the exact contours of the claim are not clear, Riggins appears to argue his attorney was ineffective for not adequately challenging Officer Taylor's statement in the affidavit in support of the warrant for Riggins's arrest that during an intercepted phone call on October 21, 2006, Riggins stated he had a very high yield of crack cocaine when he cooked cocaine purchased from the other party to the call. Riggins contends his counsel established the falsity of this statement during cross-examination of Taylor at the hearing on Riggins's *Franks* motion, but then failed to use the falsity of the statement to impeach Taylor at trial or to challenge the sufficiency of the Government's evidence that Riggins ever possessed crack at trial and on direct appeal.[9] The Government argues the amendment should not be permitted because it is an effort by

---
[9] Riggins asserts he decided to go to trial based on a defense strategy of showing the crack cocaine charge was based on a false statement by Taylor, a strategy his counsel subsequently abandoned.

Riggins to raise a new claim after expiration of the applicable one-year statute of limitations and is therefore time-barred.

Motions under § 2255 are subject to a one-year limitations period, which runs from the latest of the following dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)-(4). Here, the one-year limitations period runs from June 30, 2009, the date Riggins's judgment of conviction became final,[10] as the dates specified in paragraphs (2) and (3) are plainly inapplicable and Riggins has failed to show the facts supporting his ineffective assistance claim could not have been discovered by the time the judgment became final.[11] Thus, because

---

[10] The Third Circuit entered a judgment affirming Riggins's conviction on April 1, 2009, following which Riggins had 90 days—or until June 30, 2009—to file a petition for a writ of certiorari. *See Clay v. United States*, 537 U.S. 522, 532 (2003) ("[F]or federal criminal defendants who do not file a petition for certiorari with th[e] [Supreme] Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires.").

[11] Although Riggins suggests he did not know what issue had been raised on direct appeal until after the Government filed its response to his § 2255 motion, Pet'r's Reply 2, he does not explain why he could not have discovered the issue raised in his own appeal through the exercise of due diligence. Moreover, Riggins was well aware of the basis for his claim that his counsel was ineffective at trial long before he filed his § 2255 motion, having raised this issue at his sentencing hearing in April 2008. *See* Sentencing Hr'g Tr. 36-38, Apr. 7, 2008. Indeed, in response to Riggins's argument regarding his counsel's ineffectiveness, this Court advised him the issues regarding his attorney's "stewardship of the case [were] issues that could be decided on collateral review and . . . are not

9

Riggins's reply brief seeking leave to amend was not filed until January 2011, his ineffective assistance of counsel claim is time-barred unless it relates back to Riggins's original, timely filed § 2255 motion. *See United States v. Thomas*, 221 F.3d 430, 436 (3d Cir. 2000) (holding, "as in non-habeas civil proceedings, a party cannot amend a § 2255 petition to add a completely new claim after the statute of limitations has expired").

An amendment to a § 2255 motion will be deemed to relate back to the date of the original motion if the original and amended motions "state claims that are tied to a common core of operative facts." *Mayle v. Felix*, 545 U.S. 644, 664 (2005); *see also Thomas*, 221 F.3d at 436 (explaining an amendment relates back to an original § 2255 motion if it provides factual clarification or amplification of a claim or theory in the original motion, but not if it seeks to add an entirely new claim or new theory of relief). Riggins concedes he did not include an ineffective assistance of counsel claim in his original § 2255 motion, Pet'r's Reply 2, but argues the amendment nevertheless relates back to the motion because the ineffective assistance claim arises out of the same set of facts as the issue Riggins identified as having been raised on direct appeal, namely,

> [t]hat there never was any crack cocaine and that the Agent gave Sworn of Oath false testimony to what he said he heard over the phone in conversations at hearing of *Franks v. Delaware*. Under oath he stated he never heard me say anything about crack or cooking cocaine. Besides that there isn't any crack cocaine.

Pet'r's § 2255 Mot. ¶ 9(f).

The problem with this argument, however, is that neither the form § 2255 motion submitted by Riggins nor the memorandum of law in support thereof gives any indication Riggins was attempting to raise an issue regarding Officer Taylor's allegedly false testimony or the lack of evidence of crack cocaine on collateral review. The form motion mentions these issues solely as the

necessarily part of the direct appeal." *Id.* at 51.

grounds raised in Riggins's direct appeal. *Id.* ¶¶ 8-9 (directing the petitioner to state whether he appealed from the judgment of conviction and, if so, on what grounds). There is no reference to either issue in the portion of the form motion instructing Riggins to "state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States." *Id.* ¶ 12. Nor is there any mention of these issues anywhere in Riggins's 14-page memorandum of law, which specifically identifies the two "issues presented" on collateral review, both of which pertain to the constitutionality of the sentencing disparity between crack and powder cocaine offenses. Pet'r's Mem. in Support of § 2255 Mot. 2. In these circumstances, even construing Riggins's § 2255 motion liberally, the motion cannot reasonably be understood to assert a challenge to the sufficiency of the evidence on the crack cocaine charge, much less a claim that counsel was ineffective for failing to assert such a challenge. Because Riggins's proposed ineffective assistance of counsel claim is not an effort to amplify his constitutional challenge to his sentence and does not share a common core of operative facts with his sentencing claims, the amendment does not relate back to the date of his original petition. Thus, because Riggins did not seek leave to amend until January 2011—more than six months after the one-year limitations period expired in June 2010—the amendment is untimely and will be denied.[12]

---

[12] Even if Riggins's proposed amendment did relate back to his original § 2255 motion, it still would not provide a basis for relief. To establish a claim for ineffective assistance of counsel, Riggins must show (1) "his counsel's representation 'fell below an objective standard of reasonableness,'" and (2) he was prejudiced by the deficient performance in that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Lilly*, 536 F.3d 190, 195-96 (3d Cir. 2008) (quoting *Strickland v. Washington*, 466 U.S. 687-88, 694 (1984)).

    Insofar as Riggins challenges his counsel's failure to impeach Officer Taylor with his testimony from the hearing on the *Franks* motion, Riggins cannot show this decision was objectively unreasonable. First, "[d]ecisions about 'whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature' and generally will not support an ineffective assistance claim." *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) (quoting *United States v.*

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

*Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987)) (second alteration in original); *see also United States v. Bellinger*, No. 09-4555, 2010 WL 3364335, at *5 (E.D. Pa. Aug. 24, 2010) (same). Second, unlike his testimony at the hearing on the *Franks* motion, Taylor's trial testimony did not address the content of the intercepted call on October 21, 2006, and there was thus no reason to impeach him with his prior testimony about the call. Finally, contrary to Riggins's argument, Taylor did not admit at the hearing on the *Franks* motion that his characterization of Riggins's statements during the October 21 call was false. Rather, although Taylor conceded Riggins did not expressly refer to getting a "very high yield of crack cocaine" when he cooked cocaine he had purchased, Taylor explained why he interpreted Riggins's statements during the call in this manner. The possibility Taylor would repeat this explanation at trial gave Riggins's counsel a further reason not to pursue the issue in cross-examining Taylor.

Insofar as Riggins questions his counsel's failure to challenge the sufficiency of the evidence regarding Riggins's possession of crack—at trial or on appeal—Riggins cannot show there is a reasonable probability such a challenge would have been successful in light of the significant evidence presented that Riggins was cooking the cocaine he purchased from his supplier, Government witness Hilario Tamarez-Canario, into crack. Such evidence included Canario's testimony that Riggins repeatedly complained to him about the quality of the cocaine and about "losing" cocaine, which Canario understood to mean Riggins was cooking the cocaine into crack, as well as expert testimony from FBI Special Agent Cliff Fiedler that the plastic baggies with the corners torn off recovered from Riggins's residence suggested the bags were used to package crack and that Riggins's statements during his calls to Canario also indicated Riggins was cooking the cocaine he purchased into crack. Moreover, although Riggins testified in his own defense at trial and denied cooking cocaine into crack, the Government was permitted to impeach him with his statements during a proffer session that he would purchase 28 to 55 grams of cocaine from Canario at least three times a week "[a]nd he, himself, would [cook] it into crack cocaine." Trial Tr. vol. 3, 115, Oct. 24, 2007. In light of this evidence, which this Court found sufficient to withstand Riggins's motion for a judgment of acquittal at the close of the Government's case, Riggins cannot show it is reasonably probable that had his counsel challenged the sufficiency of the evidence on the crack charge at a later stage of the case, the challenge would have been successful.